## UNITED STATES v. COWART et al.

(District Court, S. D. Alabama, S. D.    April 19, 1913.)

### No. 268.

1. PUBLIC LANDS (§ 120*)—PATENT—VACATION—FRAUD.

Where a patent to public land has been regularly issued by the proper officers under the hand and seal of the President of the United States, it cannot be set aside for fraud and false testimony on the part of the entryman, unless the same is established by clear and convincing evidence, and not by a bare preponderance thereof.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. § 120.*]

2. PUBLIC LANDS (§ 138*)—CONVEYANCE—PATENT—VACATION—FRAUD OF ENTRYMAN—BONA FIDE PURCHASER.

In an action by the United States to cancel a patent to certain public land conveyed to defendant B., because of alleged fraud and false swearing on the part of the entryman, evidence held insufficient to justify a finding that B. had knowledge of the entryman's fraud at the time he purchased the land, notwithstanding he failed to testify in his own behalf.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 368; Dec. Dig. § 138.*]

In Equity. Suit by the United States against Vicy M. Cowart and others. Decree dismissing the bill as against defendant Lewis I. Brannan, and for the United States against the other defendants.

Wm. H. Armbrecht, U. S. Atty., and Alex. T. Howard, Asst. U. S. Atty., both of Mobile, Ala.

Rich & Hamilton, of Mobile, Ala., for respondent Brannan.

TOULMIN, District Judge. This is a bill filed by complainant February 16, 1909, praying the court to set aside and declare null and void: First, the patent issued by the United States to one Vicy M. Cowart on August 16, 1904, for the west half of the northwest quarter, the northeast quarter of the northwest quarter, and the north-

west quarter of the northeast quarter of section 4, in township 2 south, of range 4 west of St. Stephen's meridian, in Alabama, containing 160.30 acres; second, the deed by patentee to H. D. Wilson, dated October 7, 1904, for the same land; and, third, the deed (so far as this land is concerned) by Wilson and wife to Lewis I. Brannan, dated September 7, 1905.

The grounds stated on which the court is asked to take such action are: That the said patent was obtained by testimony, on the final proof, which was false and untrue, in that the claimant and her two witnesses testified that she had established actual residence on the land in December, 1901, and that she had resided continuously thereon, as far as possible, not absenting herself for more than two weeks at a time, off at work; whereas, as a matter of fact, claimant did not establish actual residence on the land in December, 1901, nor live continuously on it from the date of application to the date of final proof, nor ever did establish actual residence on said land. That with knowledge of all these facts, and of the fraud practiced in obtaining the patent, said Wilson, a few months after it was issued, accepted a deed for the land in question from Miss Cowart for the recited consideration of $600, although he knew at the time that patentee had not complied with the homestead laws in obtaining the patent, but had procured the same through false and fraudulent testimony. And the bill charges the same as to Lewis I. Brannan, to whom, 11 months later (September 7, 1905), Wilson conveyed the said land, together with several other tracts, by deed, for the recited consideration of $500; that Brannan likewise knew, at the time of accepting Wilson's deed, that the patent had been so fraudulently obtained, and that patentee had not lived on the land, nor established actual residence thereon; and that he was, therefore, not a bona fide purchaser, for value, without notice of said fraud.

Defendants Cowart and Wilson having made no defense, a decree pro confesso was previously entered against each of them. Defendant Brannan, however, filed a sworn answer, denying the allegations of the bill so far as it charges that, at the time he accepted Wilson's deed, he had knowledge of the fraud on the part of the patentee, and sets up the defense that he was an innocent purchaser, for value, without notice of fraud, or any irregularity in obtaining the patent, but alleges that he acted in good faith, upon the patent to Miss Cowart and her deed to Wilson being exhibited to him, in purchasing the land from Wilson, and that he had no knowledge or notice of any facts tending to cast doubt or suspicion on said title.

[1] "We take the general doctrine to be that when, in a court of equity, it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence, which leaves the issue in doubt. If the proposition * * * is sound in regard to the ordinary contracts of private individuals, how much more should it be observed where the attempt is to annul the grants, the patents, and other solemn evidences of title emanating from the government of the United States under its official seal. In this class of cases, the respect due to a patent, the presumptions that all preceding steps required by the law had been observed before its issue, the immense importance and necessity of the stability of titles de-

pendent upon these official instruments, demand that the effort to set them aside, to annul them, or to correct mistakes in them, should only be successful when the allegations on which it is attempted are clearly stated and fully sustained by proof. It is not to be admitted that the titles by which so much property in this country and so many rights are held, purporting to emanate from the authoritative action of the officers of the government, and, as in this case, under the seal and signature of the President of the United States himself, shall be dependent upon the hazard of successful resistance to the whims and caprices of every person who chooses to attack them in a court of justice; but it should be well understood that only that class of evidence which commands respect, and that amount of it which produces conviction, shall make such an attempt successful." United States v. Budd, 144 U. S. 161, 162, 12 Sup. Ct. 577, 36 L. Ed. 384. citing Maxwell Land Grant Case, 121 U. S. 325, 381, 7 Sup. Ct. 1015, 30 L. Ed. 949.

A patent, regularly issued and signed by the proper officers of the government, cannot be avoided or set aside on mere conjecture or suspicion, but the testimony on which this is done must be "clear and convincing." 121 U. S., supra.

"The presumption is that the patent" for land issued by officers of the United States "is valid, and passed the legal title; and, furthermore, it is prima facie evidence of itself that all the incipient steps had been regularly taken before the title was perfected by the patent." Minter v. Crommelin, 18 How. 87, 15 L. Ed. 279; Polk v. Wendal, 9 Cranch, 98, 99, 3 L. Ed. 665.

"A patent is the highest evidence of title, and is conclusive as against the government, and all claiming under junior patents or titles, until it is set aside or annulled by some judicial tribunal." 121 U. S., supra, 380, 7 Sup. Ct. 1028, 30 L. Ed. 949.

"In order to overthrow a patent on charges of fraud on the part of the entryman. and knowledge thereof on the part of the purchaser. the proof must be clear, and fraud or knowledge of fraud in the entry will not be inferred from a merely suspicious circumstance. The purchaser is not bound to hunt for grounds of doubt." U. S. v. Clark, 200 U. S. 601, 26 Sup. Ct. 340, 50 L. Ed. 613.

The evidence on behalf of complainant clearly shows that the patent was obtained through false testimony, for the patentee (the government's main witness) now admits, notwithstanding her affidavit to the contrary on the final proof, that she did not establish actual residence nor live on the land at all, but visited it only three or four times a year, had a small house built thereon (which was really not habitable), and cultivated a small portion of it; her actual home during the time she was supposed to be living on the homestead being at Wilmer, Ala., where she kept a hotel. She is corroborated in her last testimony, to some extent, by witness Snow.

The only question of fact in this case to determine is whether defendant Brannan, at the time he accepted the deed from Wilson for this homestead (along with other tracts), knew of the fraud practiced in obtaining the patent.

[2] The main testimony on this point is that of the patentee, which is not of a character to "command respect" or "produce conviction" to any great degree, except in so far as she may be corroborated, especially as she is shown to have been "hostile" to Brannan for 12 years, dating from a period prior to her entry of this land. Defendant Brannan operated a turpentine distillery at Wilmer, Ala., a portion of the time between the years 1901 and 1904, this being about seven miles distant from the homestead in question. There is tes-

timony that he "worked" the trees on land as far out from Wilmer as that distance; but there is none to show that he worked the trees on that homestead, or in the direction or vicinity thereof. He lived at Wilmer at the same time that the patentee lived there, and during the same years that she was supposed to be living on her homestead. He was away on business, however, a great deal of the time. She testified that Brannan knew that she did not live on her homestead—which, of course, is a matter of opinion or conjecture, as she states no facts sufficient to clearly show this; but, admitting that he knew she lived in Wilmer during those years, there is no evidence to show that he then knew she had entered a homestead. It is true that in 1905, about a year after the patent was issued, when he bought a quantity of land from Wilson, in which this homestead was included, the patent was exhibited to him, and it might be conjectured that he then recalled the fact that the patentee had lived in Wilmer from 1901 to 1904; but this would be a matter of mere surmise, and not strong enough to overcome the presumption that arises, from a patent regularly issued, that all necessary steps have been complied with in its acquirement. In other words, there is no "clear and convincing" evidence, such as the law requires, to warrant the court's finding that Brannan had knowledge of this fraud and setting aside the deed he obtained from Wilson, although there may be circumstances shown sufficient to generate a suspicion, or on which to hazard a guess, that he did possess such knowledge.

Some comment was made as to defendant Brannan's failure to testify, and the presumption that would arise thereby when there were facts pertinent to the issue that were peculiarly within his knowledge, sufficient to contradict or explain evidence which is conflicting or circumstantial; but my opinion is that, in this case, no prima facie case has been established by complainant, and, as stated in my opinion in United States v. Tillman et al., 205 Fed. 392:

"When evidence is conflicting or circumstantial, and it is in the power of a party to contradict or explain, a presumption can and should be indulged against him if he fail to testify without satisfactory reason. But such presumption should not be indulged against a defendant for not introducing himself to disprove facts essential to plaintiff's recovery, which he has failed to prima facie establish. He may remain silent, until the plaintiff has shown a case which calls upon him to speak in denial or explanation." Pollak v. Davidson, 87 Ala. 557, 6 South. 312; 1 Starkie on Evidence, 54; Saunty v. U. S., 117 Fed. 132, 55 C. C. A. 148.

Decree dismissing bill as to respondent Lewis I. Brannan.